**Robert Ronald HOLMES,**
**petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C7–88–921.

Supreme Court of Minnesota.

March 17, 1989.

C. Paul Jones, State Public Defender, Cathryn Middlebrook, Asst. State Public Defender, University of Minnesota, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Robert Stanich, Sp. Asst. Atty. Gen., St. Paul, and David Peterson, Lyon County Atty., Marshall, for respondent.

WAHL, Justice.

In *Holmes v. State*, Case No. C7–88–921 (Minn.App., filed December 20, 1988) [1988 WL 134802] the court of appeals affirmed defendant's conviction of and sentence for second-degree intentional murder, Minn. Stat. § 609.19(1) (1988), and affirmed the order of the district court denying postconviction relief. Issues addressed by the court of appeals in its decision were: (1) whether the trial court erred in refusing to allow defendant to withdraw his guilty plea, (2) whether the trial court erred in computing defendant's criminal history score, and (3) whether the trial court was justified in departing from the presumptive sentence. We granted defendant's petition for review for the limited purpose of considering the issue whether the trial court was justified in departing durationally from the presumptive sentence. Holding that the departure is unjustified, we reduce defendant's sentence to the maximum presumptive sentence duration, here 171 months.

Defendant asked his estranged wife to have lunch with him on January 17, 1987. He apparently hoped to arrange a reconciliation. On the way to lunch they began arguing. An eyewitness saw defendant's car stopped diagonally on the highway outside of Marshall and saw defendant's wife running toward a nearby parking lot, with defendant running after her. Defendant, who had a large hunting knife and some carpenter's tools on his person, caught up with her and stabbed her three times with the knife. The eyewitness asked defendant what he was doing. Defendant told him to get the hell out of there. Defendant attempted to lift his wife (he later said in an attempt to get her to his car and take her to the hospital) but gave up, went back to his car and drove it to the parking lot near

his wife. When a sheriff's deputy arrived moments later, defendant told the deputy to call an ambulance. The victim had no pulse. She was pronounced dead at the hospital when efforts to revive her failed.

Defendant was charged by complaint with second-degree intentional murder and second-degree felony murder. Represented by counsel, he pleaded guilty to the second-degree intentional murder charge.

At that time, the presumptive sentence for the offense (a severity level X offense) when committed by one with defendant's criminal history score (two) was 162 (153–171) months in prison. (Subsequently the presumptive sentence for the offense when committed by one with defendant's criminal history score was increased to 256 (250–262) months.) The trial court doubled the presumptive sentence, imposing a term of 324 months or 27 years, meaning that with time off for good behavior defendant would be released in 18 years, meaning in turn that defendant would serve the same amount of time in prison that many who are convicted of first-degree premeditated murder serve.

The three-judge panel of the court of appeals, with one judge dissenting, concluded that the departure was justified. *Holmes v. State*, Case No. C7-88-921 (Minn.App., filed December 20, 1988).

"The general issue that faces a trial court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Back*, 341 N.W.2d 273, 276 (Minn.1983). In this case the trial court in essence concluded, after considering all the facts, that the defendant's conduct was sufficiently different from—significantly more cruel than—that usually associated with the offense of intentional murder as to justify doubling the presumptive sentence. In the final analysis, our decision whether a particular durational departure by a trial judge was justified "must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial

districts." *State v. Norton*, 328 N.W.2d 142, 146–47 (Minn.1982).

Looking at all the facts and comparing this case with other cases of intentional murder in which departures have or have not been upheld, we conclude that the departure in this case was unjustified. Relevant cases include: *State v. Campbell*, 367 N.W.2d 454, 460–61 (Minn.1985) (departure upheld in brutal murder of retarded woman to prevent her from testifying against accomplice in rape case; victim's throat was cut from ear to ear and there were 17 stab wounds to chest and back of victim; victim's trust was used to gain entry to her house); *State v. Vogelpohl*, 326 N.W.2d 635, 636 (Minn.1982) (defendant committed murder in particularly brutal way, hitting victim on head at least eight times with two different hammers and then stuffing her mouth with paper so he would not have to listen to dying sounds); *State v. Gurske*, 424 N.W.2d 300, 305 (Minn.App.1988) *pet. for rev. denied* (Minn.1988) (departure upheld where defendant stabbed the victim, poured accelerant on victim's face, and set fire to trailer while victim may have been alive; victim's son witnessed fire knowing victim was in there); *State v. Volk*, 421 N.W.2d 360, 365–66 (Minn.App.1988) *pet. for rev. denied* (Minn.1988) (upholding departure where defendant gained entry to man's apartment by obtaining his trust, then tied him up and gagged him and killed him in cold-blooded execution-style killing); *State v. Dircks*, 412 N.W.2d 765, 768 (Minn.App.1987), *pet. for rev. denied* (Minn.1987) (departure upheld where defendant slashed victim's throat four or five times, then hit her with baseball bat, then put sleeping bag or mattress over her and set her on fire; victim may have been breathing when fire was set).

Cruelty is a matter of degree and it is not always easy to say when departure is or is not justified. It is true that there was no excuse for what defendant did and that his conduct was reprehensible. But the same may be said in every case in which a defendant stands convicted of second-degree intentional murder. We have no choice but to conclude that the departure was unjustified because we believe that the

conduct involved in this case of intentional murder was not significantly different from that typically involved in the commission of that crime. Accordingly, defendant's sentence is reduced to 171 months, which at the time was the applicable maximum presumptive sentence for the offense by one with defendant's criminal history score.

Affirmed as modified.