**STATE of Minnesota, Respondent,**

v.

**Charles Emil McELDERRY, Appellant.**

**No. CX–88–122.**

Court of Appeals of Minnesota.

April 12, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., John E. DeSanto, Asst. Co. Atty., Duluth, respondent.

C. Paul Jones, State Public Defender, Susan Andrews, Asst. Public Defender, St. Paul, appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ.

**OPINION**

LANSING, Judge.

After serving over 11 months at the Northeast Regional Correctional Center (NERCC) under conditions of probation, Charles McElderry moved for execution of

his stayed sentences. He appeals denial of that motion.

FACTS

In May 1986, appellant Charles McElderry was charged with the theft of several newspaper vending machines. On July 29, 1986, while he was on supervised release pending trial on the theft charge, he and another man burglarized several retail stores.

In October 1986 McElderry submitted a petition to plead guilty to the burglary charges. In its plea offer, the state agreed to drop all but four of the burglary charges and recommend that the remaining charges be treated as a single behavioral incident counting one criminal history point. The plea offer noted that this treatment would result in a presumptive sentence of a year and a day stayed, or 15 months stayed if McElderry pleaded guilty to the theft charge before he was sentenced for the burglary. The trial judge accepted the burglary pleas on October 27, 1986, and deferred sentencing pending presentence investigation.

McElderry submitted two separate petitions to plead guilty on the theft charge. The first, filed in November 1986, stated that the attorneys had agreed that if McElderry pleaded guilty to the theft charge and agreed to restitution, the state would agree to treat the burglaries as one criminal history point and agree to concurrent sentencing. The trial judge responded by a December 1986 letter to all counsel in which he expressed his belief that the two sentences should be consecutive and offered McElderry the opportunity to withdraw either petition and go to trial.

However, the plea petition McElderry submitted at his January 1987 sentencing hearing stated essentially the same terms of agreement. The trial court first sentenced McElderry to 18 months stayed on the burglary convictions, relying on a sentencing report which indicated one criminal history point for the theft charge and one custody status point.[1] When the defense

1. Although no one raised the issue, we note that custody status points are not properly assigned

for crimes committed while on *pretrial* super-

lawyer pointed out that McElderry had not yet been convicted of the theft charge, the trial court reduced McElderry's criminal history total to 1 and sentenced him to the presumptive sentence of 15 months stayed on the burglary conviction.

The trial court then accepted the second plea petition on the theft charge and sentenced McElderry to the presumptive sentence of 13 months stayed, to run concurrently with the stayed 15–month burglary sentence. The court stayed execution of the theft sentence for four years and the burglary sentence for three years and ordered McElderry to serve one year in the NERCC as a condition of probation. McElderry received 16 days of jail credit against his NERCC term and began serving it immediately.

In November 1987, after having served over 11 months at the NERCC, McElderry moved for execution of the stayed sentences. The trial judge denied the motion for execution, and McElderry appeals.

## ISSUE

Did the trial court err in denying McElderry's motion for execution of his sentences?

## ANALYSIS

■ Under Minnesota law, a convicted offender has the right to refuse probation and insist on execution of a stayed prison term when the conditions of probation are more onerous than the executed sentence. *State v. Randolph*, 316 N.W.2d 508, 510 (Minn.1982). This rule reflects the court's observation that a probationary sentence more onerous than the presumptive sentence constitutes a de facto departure from the spirit, if not the letter, of the sentencing guidelines. *Id.*[2]

This court has held, following *Randolph*, that an offender who originally chose pro-

bation and served one month in the workhouse did not waive his right to execution of sentence, at least when the record did not indicate a "knowing, intelligent waiver of his right to be sentenced according to law." *State v. Sutherlin*, 341 N.W.2d 303, 306 (Minn.Ct.App.1983).

■ The state's argument that *Sutherlin* does not apply because McElderry waived his right to an executed sentence is unpersuasive. Although the plea offers stated that McElderry's probable sentences would be stayed, they did not refer to probation and nothing in the record indicates that McElderry was ever told that he could insist on execution of the sentence. The trial judge merely imposed sentence, stayed execution, and informed McElderry of the conditions of the stay. Similarly, the written conditions of probation that McElderry was required to acknowledge did not indicate that he had an option to refuse probation. The form stated that the court was granting him the "privilege" of probation and required his promise to comply with the conditions.

The state's concern that execution would allow McElderry to "dictate" his sentence is misplaced. The purpose of the sentencing guidelines is to reduce sentencing disparity by making sentences proportionate to the offenses on which they are based. A trial court thus may not rely on a negotiated plea agreement to justify a departure from the presumptive sentence. *See State v. Pendzimas*, 379 N.W.2d 247, 248 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 14, 1986) (citing *State v. Garcia*, 302 N.W.2d 643, 646–47 (Minn.1981)). Allowing an offender to "agree to" conditions of probation more onerous than the presumptive executed sentence would undercut the principle of uniformity on which both *Randolph* and *Garcia* are based. *Cf. State v. Wilwert*, 317 N.W.2d 346, 347 (Minn.1982) (when presumptive sentence for two of-

---

vised release. *See* Minnesota Sentencing Guidelines II.B.201.

**2.** The *Randolph* court observed that the lack of credit for probationary jail time created a situation in which some defendants would not want probation. *Id.,* 316 N.W.2d at 509–10. Al-

though defendants now receive credit for probationary jail time and also "good time" credit, that change does not attenuate *Randolph's* holding that defendants are entitled to demand execution when probation is more onerous than execution of sentence.

fenses is stayed concurrent terms entitling release in 12 months, trial court may not condition probation on consecutive jail terms totaling more than one year).

The state admits that McElderry can no longer be incarcerated for any violation of the conditions of his probation. If his probation were revoked and sentence executed, McElderry would receive credit for his one-year term at the NERCC. *See* Minn. Sentencing Guidelines III.C.02; Minn.R.Crim.P. 27.03, subd. 4(B); *State v. Wright,* 354 N.W.2d 615, 616 (Minn.Ct.App. 1984). He would also be entitled to "good-time credit" for his time spent in custody as a condition of probation. *State v. Barg,* 391 N.W.2d 773, 776 (Minn.1986). We see no reason to continue probation when its revocation would result only in what McElderry currently demands—the execution of his sentences by crediting him for time served.

Reversed.